No. 23-3255

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

---v.---

TOMMY COLLIER,

*Defendant-Appellant.*

———

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

The Honorable D.P. Marshall, Jr., U.S. District Court Judge
No. 4:19-CR-437

---

## APPELLANT'S BRIEF

---

**Christopher H. Baker**

JAMES LAW FIRM
1001 La Harpe Blvd.
Little Rock, AR 72201
PHONE: (501) 375-0900
FAX: (501) 375-1356

ATTORNEY FOR APPELLANT

## SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT

Tommy Collier appeals the violation of his Fourth Amendment rights that occurred on September 11, 2018, when an Arkansas State Police K9 officer independently decoded a "profound alert" from his canine, Raptor. A search of Mr. Collier's vehicle followed this "profound alert," substances were recovered, and Tommy was indicted for a violation of 21 U.S.C. §§ 841(A) & (b)(1)(A).

Following a long and strongly contested hearing on suppression, a trial was commenced, and a finding of guilt was delivered by the jury on August 3, 2023. The trial generated numerous contested issues, but primarily these matters related to rules and compliance with expert disclosures under Fed. R. Crim. P. 16 and expert testimony. Mr. Collier further alleged and generated evidence that the Government had not put forth evidence of cocaine isomers that qualified as a controlled substance under federal law and moved for and was denied appropriate instructions and directives that were necessary under this theory.

Canines continue to shed the protective coat of the Fourth Amendment and are a constitutional problem. Mr. Collier believes the court would benefit from oral arguments and suggests that 20 minutes per side would be adequate to address these matters.

Appellate Case: 23-3255    Page: 2    Date Filed: 12/19/2023 Entry ID: 5346058

# Table of Contents

SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT............i

TABLE OF AUTHORITIES ................................................................iii

JURISDICTIONAL STATEMENT .......................................................1

STATEMENT OF THE ISSUES...........................................................2

STATEMENT OF THE CASE ..............................................................3

   A.   BACKGROUND ........................................................................3

   B.   PROCEDURAL HISTORY ......................................................5

SUMMARY OF THE ARGUMENT .....................................................5

ARGUMENT........................................................................................5

   1.   Arkansas' Canine Program Is Not Up To Snuff....................5

   2.   The PSP Program ................................................................8

   3.   Arkansas Record Keeping Is Below Par and Contrary to Industry

Standards ...............................................................................9

   4.   The District Court Utilized The Wrong Standard For Suppression.......... 11

   5.   Expert Disclosures were Insufficient Under Rule 16 .................................. 14

   6.   Sufficiency of the Evidence & Improper Jury Instruction........................... 17

   7.   The District Court Erred In Denying Collier's Motion For A Mistrial

When The Prosecuting Attorney Commented On His Post-Miranda Silence

During The Government's Closing Argument. ...................................... 19

   CONCLUSION ........................................................................... 24

Appellate Case: 23-3255   Page: 3   Date Filed: 12/19/2023 Entry ID: 5346058

# TABLE OF AUTHORITIES

<span style="font-variant: small-caps;">CASES</span>

*Brecht v. Abrahamson*, 507 U.S. 619 (1993) ----------------------------------------------- 20

*Chapman v. California*, 386 U.S. 18 (1967) ------------------------------------------------ 19

*Cooper Tire & Rubber Co. v. St. Paul Fire & Marine Ins. Co.*, 48 F.3d 365 (8th Cir. 1995)

-------------------------------------------------------------------------------------------------- 12

*Counterman v. Colorado*, 600 U.S. 66 (2023) --------------------------------------------- 13

*Fields v. Leapley*, 30 F.3d 986 (8th Cir. 1994) -------------------------------------------- 23

*Florida v. Harris*, 568 U.S. 237 (2013) ------------------------------------------- 2, 7, 12, 13

*Geier v. Missouri Ethics Comm'n*, 715 F.3d 674 (8th Cir. 2013) ---------------------- 14

*Graham v. Connor*, 490 U.S. 386 (1989) -------------------------------------------------- 13

*Griffin v. California*, 380 U.S. 609 (1965) -------------------------------------------------2, 20

*Griffith v. Kentucky*, 479 U.S. 314 (1987) ------------------------------------------------- 1

*South Dakota v. Guerra*, 772 N.W.2d 907 (2009) ---------------------------------------- 8

*Tripp v. W. Nat'l Mut. Ins. Co.*, 664 F.3d 1200 (8th Cir. 2011) ---------------------------11

*United States v. Allen*, 297 F.3d 790 (8th Cir. 2002) ------------------------------------- 6

*United States v. Buchanan*, 604 F.3d 517 (8th Cir. 2010) -------------------------------- 14

*United States v. Camacho*, 555 F.3d 695 (8th Cir. 2009)--------------------------------- 14

*United States v. Clayton*, 210 F.3d 841 (8th Cir. 2000) ---------------------------------- 6

*United States v. Coleman*, 635 F.3d 380 (8th Cir. 2011) --------------------------------- 14

*United States v. Conroy*, 424 F.3d 833 (8th Cir. 2005)------------------------------------ 14

Appellate Case: 23-3255    Page: 4    Date Filed: 12/19/2023 Entry ID: 5346058

*United States v. Conway*, 754 F.3d 580 (8th Cir. 2014) ----------------------------------------17

*United States v. Donnelly*, 475 F.3d 946 (8th Cir. 2007) -------------------------------------- 6

*United States v. Durant,* 730 F.2d 1180 (8th Cir. 1984) -----------------------------------19

*United States v. Francesco*, 725 F.2d 817 (1st Cir. 1984)----------------------------------- 18, 19

*United States v. Garcia-Garcia*, 957 F.3d 887 (8th Cir. 2020) --------------------------------13

*United States v. Gentry*, 555 F.3d 659 (8th Cir. 2009) -------------------------------------2, 20

*United States v. Gonzalez*, 781 F.3d 422 (8th Cir. 2015) -------------------------------------- 6

*United States v. Guess*, No. 18-cr-11-DWF-KMM, 2018 U.S. Dist. LEXIS 241780 (D.

Minn. Sep. 5, 2018) ---------------------------------------------------------------12

*United States v. Johnson*, 968 F.2d 768 (8th Cir. 1992) ------------------------------------19

*United States v. Kenyon*, 481 F.3d 1054 (8th Cir. 2007) ------------------------------------14

*United States v. Koonce*, 884 F.2d 349 (8th Cir. 1989) -------------------------------------19

*United States v. Overton*, 971 F.3d 756 (8th Cir. 2020) ------------------------------------17

*United States v. Place*, 462 U.S. 696 (1983)-------------------------------------------- 6

*United States v. Ross,* 719 F.2d 615 (2nd Cir. 1983) -------------------------------------2, 18

*United States v. Triplett*, 195 F.3d 990 (8th Cir. 1999) ------------------------------- 2, 22, 23

*United States v. Tuton*, 893 F.3d 562 (8th Cir. 2018) --------------------------------------2, 12

## STATUTES

18 U.S.C. § 3231 ---------------------------------------------------------------------- 1

21 U.S.C. § 802-------------------------------------------------------------------------18

iv

21 U.S.C. § 802(17)(D)------------------------------------------------------------17

21 U.S.C. § 841(a)----------------------------------------------------------- 1, 3, 5

21 U.S.C. § 841(b)(1)(A) --------------------------------------------------- 1, 3, 5

<u>R<small>ULES</small></u>

Fed. R. App. P.  4(b)(1)(A)(i)  -------------------------------------------------- 1

Fed. R. Crim. P. 16(a)(1)(G) --------------------------------------------------14

Fed. R. Crim. P. 16(a)(1)(G)(i)------------------------------------------------ 14, 15

Fed. R. Crim. P. 16(a)(1)(G)(iii) --------------------------------------------15

Fed. R. Evid. 702 ------------------------------------------------------------ 17, 18

<u>C<small>ONSTITUTIONAL</small> P<small>ROVISIONS</small></u>

U.S. Const. Amend. IV. --------------------------------------------------------- 5

U.S. Const. Amend. V.----------------------------------------------------------20

# JURISDICTIONAL STATEMENT

**<u>The decision appealed</u>**:  Defendant Tommy Collier appeals from judgment and conviction of sentence entered against him on September 25, 2023, in the Eastern District of Arkansas, on charges of trafficking cocaine.  Defendant was sentenced to 120 months of incarceration and appeals that sentence.

**<u>Jurisdiction of the court below</u>**:  Under 18 U.S.C. § 3231, "[t]he district courts of the United states shall have original jurisdiction . . . of all offenses against the laws of the United States.  The underlying offenses in this case was trafficking in violation of 21 U.S.C. §§ 841(A) & (b)(1)(A), which could be heard by the District Court.

**<u>Jurisdiction of this court</u>**:  A judgment on the conviction was entered by the district court on September 25, 2023.  A rendered judgment is a final order in a case. *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6, 107 S. Ct. 708, 712 (1987).  Following entry of the judgment, defendant filed a timely notice of appeal on October 6, 2023, for this judgment.  *See* Fed. R. App. P. 4(b)(1)(A)(i).

1

# <u>STATEMENT OF THE ISSUES</u>

1. Whether the Fourth Amendment's guard against unreasonable searches is breached when innocuous natural canine behavior -- such as increased respiration, perky ears, or a spirited wag of the tail -- is interpreted by canine handlers to be a "profound alert" that justifies the warrantless entry of a motorist's vehicle?
   a. <u>Apposite authority</u>:
      i. *Florida v. Harris*, 568 U.S. 237, 133 S. Ct. 1050 (2013)
      ii. *United States v. Tuton*, 893 F.3d 562 (8th Cir. 2018)

2. Whether the district court applied the correct test in determining whether the drug-detecting dog's behavior constituted an "alert" that would justify a warrantless entry into Collier's vehicle?
   a. <u>Apposite authority</u>:
      i. *Florida v. Harris*, 568 U.S. 237, 248, 133 S. Ct. 1050 (2013)
      ii. *United States v. Tuton*, 893 F.3d 562 (8th Cir. 2018)

3. Whether the district court erred in allowing the government to introduce expert testimony that had not been properly disclosed under Federal Rule of Criminal Procedure 16?
   a. <u>Apposite authority</u>:
      i. None.

4. Whether the district court erred in denying Collier's motion for a judgment of acquittal and issuing an improper jury instruction?
   a. <u>Apposite authority</u>:
      i. *United States v. Ross,* 719 F.2d 615 (2nd Cir. 1983)

5. Whether the prosecuting attorney's comment on Collier's silence after being Mirandized warranted a mistrial?
   a. <u>Apposite authority</u>:
      i. *Griffin v. California*, 380 U.S. 609 (1965)
      ii. *United States v. Gentry*, 555 F.3d 659 (8th Cir. 2009)
      iii. *United States v. Triplett*, 195 F.3d 990 (8th Cir. 1999)

Appellate Case: 23-3255    Page: 8    Date Filed: 12/19/2023 Entry ID: 5346058

# STATEMENT OF THE CASE[1]

## A. BACKGROUND

This case begins with a traffic stop. While the appellant, Tommy Collier, was driving on Interstate 40 in Arkansas, Travis May, an Arkansas State Trooper, observed Collier's vehicle drift toward the "fog line" on the right side of the interstate. Trooper May pulled Collier over and began asking him ordinary questions. Collier's responses made Trooper May suspicious. As a result, Trooper May summoned his partner, Mark Blackerby, to bring a drug-detecting dog named "Raptor" to the scene. They arrived shortly thereafter, and Raptor sniffed the exterior of the car.

Raptor purportedly alerted after being walked around the vehicle, and the officers searched the car. Inside the vehicle, the troopers uncovered what they suspected to have been cocaine in the back seat within some luggage. They then arrested Mr. Collier and transported him to the Lonoke County Detention Center. Afterward, the United States government indicted Collier on one count of trafficking in violation of 21 U.S.C. §§ 841(A) & (b)(1)(A). R. Doc. 1. The indictment alleged that Collier had possessed five (5) or more kilograms of cocaine with an intent to distribute it. *Id.*

---

[1] References to individual docket entries in the district court clerk's record in the underlying criminal case are cited as "R. Doc." with the docket number and page number. References to the trial transcript are cited as "TR" with the appropriate page number. References to the sentencing transcript are cited as "ST" with the appropriate page number. References to the Presentence Investigation Report are cited as "PSR" with the appropriate page and paragraph number.

3

Mr. Collier pleaded not guilty to the indictment. R. Doc. 6. As the case developed, Collier moved to suppress the evidence gathered, alleging a violation of the Fourth Amendment. R. Doc. 28. The district court denied the motion without prejudice, and without a hearing. R. Doc. 34. Collier subsequently refiled the motion to suppress, and the district court held a hearing on June 13, 2023. After hearing testimony from two troopers and two experts on drug-detecting canines, the district court denied Collier's second motion to suppress.

The case proceeded to a jury trial on August 1, 2023. R. Doc. 85. The jury heard testimony from Trooper May, Trooper Blackerby, Dan Hedges, a forensic analysis at the Arkansas State Crime Laboratory, Stephen Briggs, an expert in drug trafficking from the Department of Homeland Security, and Tommy Collier, himself. TR, Vol. 1-3, 1-438. At the close of the government's case in chief, Collier properly moved for a judgment of acquittal, which the district court denied. TR, Vol. 2, 112. At the close of defendant's case in chief, Collier properly renewed his motion for a judgment of acquittal. TR, Vol. 3, 361.

At the close of all evidence, the jury returned a guilty verdict, and Collier was sentenced to ten years imprisonment in the Bureau of Prisons on September 25, 2023. R. Doc. 119. Collier filed a timely notice of appeal on October 6, 2023. R. Doc. 121. The case is now properly before the United States Circuit Court of Appeals for the Eighth Circuit.

4

**B. PROCEDURAL HISTORY**

On August 7, 2019, the United States government indicted Collier with one count of trafficking under 21 U.S.C. §§ 841(A) & (b)(1)(A). R. Doc. 1. Collier was convicted on August 4, 2023. R. Doc. 95. The district court imposed a sentence of ten (10) years imprisonment on September 25, 2023. R. Doc. 10. On October 6, 2023, Collier filed a timely notice of appeal from the judgment and commitment order entered on September 25, 2023, by Chief Judge Marshall of the United States District Court for the Eastern District of Arkansas.

## SUMMARY OF THE ARGUMENT

The Court should reverse the Collier's conviction and sentence for the following reasons: (1) the district court erred in denying Collier's second motion to suppress physical evidence; (2) the district court erred in allowing expert testimony that the government did not properly disclose under Federal Rule of Criminal Procedure 16; (3) the district court erred in denying Collier's motion for a judgment of acquittal; (4) the district court erred when it denied Collier's proposed amendment to a jury instruction; and (5) the district court erred when it declined to grant a mistrial after the prosecuting attorney improperly commented on Collier's silence after being read the *Miranda* rights.

## ARGUMENT

1. <u>Arkansas' Canine Program Is Not Up To Snuff.</u>

The Fourth Amendment to the United States Constitution protects the right of the people to be free from unreasonable searches and seizures. U.S. Const. Amend IV.

Appellate Case: 23-3255    Page: 11    Date Filed: 12/19/2023 Entry ID: 5346058

When a district court upholds a challenged search or seizure, the circuit court "examine[s] the factual findings underlying the district court's denial of the motion for clear error and review[s] de novo the ultimate question of whether the Fourth Amendment has been violated" *United States v. Allen*, 297 F.3d 790, 794 (8th Cir. 2002) (quoting *United States v. Clayton*, 210 F.3d 841, 845 (8th Cir. 2000)); *United States v. Gonzalez*, 781 F.3d 422, 429 (8th Cir. 2015).

A "free air" sniff by a drug-detecting canine is generally not a search within the meaning of the Fourth Amendment. *See e.g. United States v. Place*, 462 U.S. 696, 707 (1983). However, canines are frequently used to sniff vehicles, and when they provide a positive alert, it may form the basis of probable cause for law enforcement to search the vehicle. *United States v. Donnelly*, 475 F.3d 946, 955 (8th Cir. 2007) ("Assuming that the dog is reliable, a dog sniff resulting in an alert on a container, car, or other item, standing alone, gives an officer probable cause to believe that there are drugs present.").

In this case, Arkansas State Trooper, Travis May, who was employed as a drug-interdiction officer, stopped Tommy Collier as he was traveling on Interstate 40 in a rental car for a suspected traffic infraction. ST 18-21. Below, Collier challenged the legality of the initial seizure. However, he does not challenge it on appeal, as the principal Fourth Amendment issue occurred after the traffic stop.

Specifically, Collier submits that the Arkansas State Police employed an unreliable and improperly trained canine, "Raptor", to sniff his rental vehicle. Given that Raptor was not sufficiently reliable or trained, there was no probable cause to

search Collier's rental car. Therefore, the district court erred in denying Collier's motion to suppress.

The district court held a hearing on Collier's second motion to suppress physical evidence on June 13, 2023. Trooper May testified that he witnessed Collier cross the fog line near the shoulder of the road. Then, during the stop, May "gained some suspicion" due to Collier's "unreasonable travel plans, [and] itinerary." ST 24. At that point, Trooper May called his partner, Trooper Mark Blackerby, to bring Raptor to conduct a sniff of the car. *Id.* After Trooper Blackerby ran the canine around the vehicle, he informed Trooper May that it had alerted, but that the dog "couldn't source it." *Id.* at 24, 42. Trooper May testified that he did not witness the dog alert during the sniff. TR, Vol. 1, 42.

Reliability of the canine program is an assessment required under *Harris*. This is, in part, due to the fact that Raptor's training, and therefore his reliability, is constitutionally deficient. At the suppression hearing, Major Roby Rhoads of the Arkansas State Police testified about the state's drug-dog training program. ST 64.

Rhoads first testified that the Arkansas program "met the minimum standard of Utah" and that they just added to the program. ST 72. It was noted that this improvement in the program began in approximately 2000. *Id.* Differences between the programs are aplenty – and the shortcuts taken by Arkansas State police are abundant. For one example, Major Rhoads testified that his certification was valid for

7

life – however, this was mistaken by his instructor. The Utah manual clearly indicates that instructors' certifications are good only for (36) months and judges for (60) months.

**2.** The PSP Program

Arkansas State Police are wholly unaware of even the basic background of their program, its origins, its standards, or functions. During examination, Rhoads stated that PSP meant "police scenting dog test or police patrol dog test." As an expert in this field, Rhoads was not able to pronounce or state what the word was, he was only able to give a generic meaning – which also was not entirely correct.

Polizeispurhundprüfung ("PSP") is a German word that effectively breaks down into "police track dog test." It is a testing protocol that originated as an examination in the State of Northrine-Westfalia. The PSP program was created by the International Congress of Police Service Dogs (CPSD). *See e.g. South Dakota v. Guerra*, 772 N.W.2d 907 (2009) (testimony of Officer Duis indicating origins of South Dakota's Program and the tie to the ICPSD).

This origin is acknowledged in government records produced by other States, particularly when the ICPSD went defunct, and States moved to restructure their programs due to the loss of certifications. For example, South Dakota's Law Enforcement Officers Standards and Training Commission held a meeting on November 8, 2017. During the meeting they noted that, "With the recent disbanding of the ICPSD, International Congress of Police Service Dogs, the commission may need to draw a state standard to point to what we can defend in court. The current

8

canine rules point to PSP and the ICPSD."[2]  How the State of Arkansas continues to

certify dogs in a program that is defunct is perplexing.

The Utah program "adopted" by Arkansas requires significant testing material,

evaluation, and scoring.  Supp. Hrg., Def. Exh. "1," Narc. Man. Ch 7.  Pg. 13-14.

There are dozens of entries, scoring criteria and grading.   In Arkansas, however,

Rhoads restructured the program in 2018 to adjust these requirements.  ST 86.

Arkansas does not comply or use any of this material, which is required by the

manual, and the standards set forth by the instructor who certified Trooper Rhoads,

Wendell Nope.

Importantly, certification documents for raptor to prove the canine was

qualified on the 2018 evaluation were never produced, despite being requested. ST

151.  Additionally, no other States have adopted or use Arkansas's program. ST 125.

**3.** <u>Arkansas Record Keeping Is Below Par and Contrary to Industry
Standards</u>

The canine program is required to keep numerous records, such as odor

training forms.  ST 87. During testimony, Trooper Rhoads testified that part of his

duties include making sure training and deployment records are complete. ST 106.

Being complete meant "filling them out" and making sure they "are as complete and

---

[2] Law Enforcement Officers Standards and Training Commission, Minutes (Nov. 8, 2017) (on file with the South Dakota Law Enforcement Officers Standards and Training Commission), available at https://boardsandcommissions.sd.gov/bcuploads/PublicDocs/November%208%20 2017%20Minutes%20(1).pdf.

Appellate Case: 23-3255     Page: 15     Date Filed: 12/19/2023 Entry ID: 5346058

accurate as [he] can." Rhoads believed that accuracy was important to his job. ST 107. Rhoads further testified that failure to follow procedures was important and not doing so was a problem for the agency. ST 107-108.

Despite Trooper Rhoads testifying that "every year once or twice we will get together as a group and exchange records and audit the records" a chasm of errors and discrepancies exist and are plainly available for review in the record. For a general highlight, one may look directly to the testimony provided Trooper Rhoads when he was confronted directly with the mistakes and testified as follows:

**Mr. Baker**: Major, this is the document that you talked about before, and is this – you audit this information. I believe that's what you said?

**Rhoads**: Yes.

**Mr. Baker**: So this information is accurate?

**Rhoads**: Yes.

**Mr. Baker**: Okay. Why is there no patrol deployments?

**Rhoads**: I don't know.

**Mr. Baker**: Could that be because it's not accurate?

**Rhoads**: There should be some patrol deployments on here.

**Mr. Baker:** I agree that there should be, but there's not, are there?

**Rhoads:** No.

**Mr. Baker**: So is this document accurate?

**Rhoads:** Not on the patrol deployment part, no.

**Mr. Baker**: Oh! Just on the other things?

**Rhoads:** Yes.

**Mr. Baker:** Did you know the patrol one was inaccurate?

**Rhoads**: I didn't know they were all blank, no.

Further during testimony, Rhoads indicated that handlers are required to perform additional training with their canine. ST 89. This training is supposed to be documented and logged. *Id.* It is the handler's responsibility to make these entries. ST 88. The evidence of Raptor's training indicated that despite years of records, not a single additional session of training was logged outside of coordinated monthly sessions. For Trooper Rhoads, this was not a problem and appeared to be standard operating procedure. ST 89. While this may be the standard for Arkansas, it is not the standard for other agencies or entities, even those using the same programs.

Additional problems included that no chemistry or drug results exist for the issued substances. ST 128. During certifications, the instructor does not use a randomizer as required by the Utah manual. ST 137. Arkansas canines can pass a "certification" course without ever providing a trained indication. ST 142.

### 4. The District Court Utilized The Wrong Standard For Suppression

The standard of review for legal errors is *de novo. Tripp v. W. Nat'l Mut. Ins. Co.*, 664 F.3d 1200, 1205 (8th Cir. 2011). Mixed questions of law and fact that require the consideration of legal concepts and the exercise of judgment about the values

underlying legal principles are also reviewed de novo. *Cooper Tire & Rubber Co. v. St. Paul Fire & Marine Ins. Co.*, 48 F.3d 365, 369 (8th Cir. 1995).

Whether a canine's "alert" is sufficient for a search depends on whether all the facts surrounding the alert "viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Florida v. Harris*, 568 U.S. 237, 248, 133 S. Ct. 1050 (2013). Instead of the appropriate standard set forth by the Supreme Court, the District Court modified their approach and utilized a standard that analyzed whether there was justification for a "a reasonable officer" to rely on the behavior changes of the canine. ST 276-277.

Further, the district court was squarely confronted with the standard it selected. *Id.* Despite being confronted with the wrong standard, the district court persisted. *Id.* at 278. This choice is problematic because the perceptions, views, and outcomes would not be the same.

To truly consider the provided behavior of a canine under the "reasonably prudent person" we must take the perspective of the untrained onlooker. This choice of perspective is not new and has effectively been considered by various district courts in our circuit. *See e.g. United States v. Guess*, No. 18-cr-11-DWF-KMM, 2018 U.S. Dist. LEXIS 241780, at *16 (D. Minn. Sep. 5, 2018). This was also discussed and considered in *Tuton. United States v. Tuton*, 893 F.3d 562, 567 (8th Cir. 2018) (noting that the expert concluded the canine gave a "profound alert," which was a behavior change that any lay person would notice)(emphasis added).

If the Supreme Court meant to imply a reasonable officer standard when deciding *Harris*, it could have done so just as it has previously. *See e.g. Graham v. Connor*, 490 U.S. 386, 388, 109 S. Ct. 1865, 1867 (1989)(reasonableness of a search must be judged from the perspective of a reasonable officer on the scene, and noting that reasonableness calculus must account for fast decision making specific to police encounters); *see also United States v. Garcia-Garcia*, 957 F.3d 887, 892 (8th Cir. 2020) ("In the context of an imperfect translation, we look to indicators that would give a reasonable officer confidence that the suspect comprehended the request."). However, this was not the standard put forth by the Supreme Court and it should not be this Court's, either.

Assessing the facts under the proper standard is important as the foundational knowledge of an officer is wholly dissimilar from that of a lay person. How a reasonable person views something can frequently change with the tides of time. *Counterman v. Colorado*, 600 U.S. 66, 143 S. Ct. 2106, 2130 (2023). During the suppression hearing, the Court and the Government were keenly aware that these different perspectives were present. *See e.g.* ST 24 (objection to testimony of Trooper May regarding observation of an "Alert" sustained on lack of expertise). Accordingly, the District Court's decision to analyze under this alternative view should be considered error.

Appellate Case: 23-3255    Page: 19    Date Filed: 12/19/2023 Entry ID: 5346058

**5.** Expert Disclosures were Insufficient Under Rule 16

When the district court rules on an alleged violation of Federal Rule of Criminal Procedure 16(a)(1)(G), this Court reviews the district court's decision under the abuse of discretion standard. *United States v. Buchanan*, 604 F.3d 517, 524 (8th Cir. 2010); *United States v. Conroy*, 424 F.3d 833, 838 (8th Cir. 2005). Although the abuse of discretion standard of review is often described as "deferential," an abuse of discretion occurs when the district court makes an error of law. *United States v. Coleman*, 635 F.3d 380, 382 (8th Cir. 2011); *Geier v. Missouri Ethics Comm'n*, 715 F.3d 674, 678 (8th Cir. 2013). Additionally, the appellant asserting reversible error under Rule 16(a)(1)(G) must demonstrate prejudice resulting from the district court's decision to admit the contested testimony. *United States v. Camacho*, 555 F.3d 695, 704 (8th Cir. 2009) (quoting *United States v. Kenyon*, 481 F.3d 1054, 1062 (8th Cir. 2007).

Rule 16(a)(1)(G) governs the government's duty to disclose the opinions of the experts it intends to call as witnesses at trial. Under Federal Rule of Criminal Procedure 16(a)(1)(G)(i), the government must, upon request from the defendant, provide written disclosures of the information it intends to use at trial under Federal Rules of Evidence 702, 703, or 705. The government's disclosures must contain the following: (1) a complete statement of all opinions that the government will elicit from the witness; (2) the bases and reasons for them; (3) the witness's qualifications; and (4) a list of all other cases the witness has testified as an expert during the previous four years. Fed. R. Crim. P. 16(a)(1)(G)(iii).

Appellate Case: 23-3255    Page: 20    Date Filed: 12/19/2023 Entry ID: 5346058

In the district court, it was undisputed that Collier made a timely and proper request under Rule 16(a)(1)(G)(i) for the bases and reasons for the opinions of Dan Hedges, who is from the Arkansas State Crime Lab. TR, Vol. 2, at 183-89. Nevertheless, Mr. Hedges opinion was contained in a boilerplate crime lab analysis form, which simply stated that he had tested the alleged controlled substances, and that the results confirmed it was cocaine. TR, Vol. 2, at 198-199. The disclosure was barren of "bases and reasons" for that opinion as required by the criminal rules. Fed. R. Crim. P. 16(a)(1)(G)(iii).

For that reason, the district court forbade the government from straying from what little information it had properly disclosed, which did not include how the alleged cocaine was tested. TR, Vol. 2, at 205. After making his ruling, Chief Judge Marshall explained the following:

> "[D]umping a bunch of all the documents giving the data is not the way you comply with the rule on expert disclosures. Now—this embedded couple of pages from our chemist is adequate, but it would be better if the United States attorney developed. . . a disclosure form. . . that hews to the letter of the rule and meets each particular requirement. . ." TR, Vol. 2, at 206.

Notwithstanding the district court's order, the district court permitted Mr. Hedges to testify beyond the scope of what the government had disclosed to the defense. TR, Vol. 2, at 220.

> **MS. DEMPSEY:** So, Mr. Hedges, once you received this box and had the packages of the drugs, describe the process for testing each package for me?

**MR. HEDGES:** Well, the process is - -

**MR. BAKER**: Objection, scope.

**THE COURT**: Hold on.  Basis?

**MR. BAKER**:  Beyond the scope of the disclosure.

**THE COURT:** Let me look at something please, Ms. Dempsey.  Overruled based on the e-mail from Ms. Williams' explanation of the testing of the cocaine, how the testing process is performed.  Proceed.  TR, Vol. 2, at 219-220.

Mr. Hedges then proceeded to explain the testing process and procedures for four separate tests, which undeniably constitute the "bases and reasons" for his opinion. TR, Vol. 2, at 221.  Although the government's disclosure vaguely referenced these tests, there was no explanation whatsoever about the testing process. *Id.*  For that reason, the district court erred when it allowed Mr. Hedges to testify about the testing process, and the district court's ruling prejudiced Mr. Collier's defense, as it prevented the defense from being able to fully analyze the expert's testimony, examine the witness, and ultimately defend against the firestorm of the undisclosed opinion.

Next, the Mr. Collier objected to the testimony of Trooper Mark Blackerby when he alleged that "Raptor alerted to the odor of narcotics."  TR, Vol. 2, at 129.  The objection was that Blackerby was testifying outside the scope of a lay witness. *Id.* at 130. The objection was lodged because during the prior suppression hearing, Trooper Travis

May was precluded from providing testimony on his observation of an alert, and only that Trooper Blackerby had communicated to him that there was an alert. ST 45.

The determination that there was an alert is not something that a lay witness should be permitted to establish. Handling a canine requires training, knowledge, and certifications that both civilians and most law enforcement officers are precluded from receiving. Accordingly, the testimony on whether raptor alerted to the presence of narcotics would have to have been based on specialized training, technical knowledge, and education that Trooper Blackerby received through his employment and falls within the ambit of Rule 702. Fed. R. Evid. 702. As proper notice was not provided; the expert statements should have been disallowed. A continuing objection was lodged for this witness and granted by the District Court. TR, Vol. 2, at 133. Because of the lack of proper notice, Mr. Collier was not properly able to analyze the expert's testimony, examine the witness, and ultimately defend against the firestorm of undisclosed opinion.

**6.** Sufficiency of the Evidence & Improper Jury Instruction

When the appellant challenges the sufficiency of the evidence, this Court employs a *de novo* standard of review, viewing the evidence "in the light most favorable to the verdict, and reversing only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Overton*, 971 F.3d 756, 766 (8th Cir. 2020) (quoting *United States v. Conway*, 754 F.3d 580, 587 (8th Cir. 2014).

Appellate Case: 23-3255     Page: 23     Date Filed: 12/19/2023 Entry ID: 5346058

The statutory definition of cocaine originates from Section 102 of the Controlled Substances Act. *See* 21 U.S.C. § 802. A narcotic drug includes "[c]ocaine, its salts, optical and geometric isomers, and salts of isomers." 21 U.S.C. § 802(17)(D). This definition does not include positional isomers of cocaine.

The question of whether the possessed substance is a prohibited form of cocaine is a question for the jury. Many circuits have held that a defendant's failure to properly raise a question on the chemical structure of the cocaine forfeited their argument. *See e.g. United States v. Francesco*, 725 F.2d 817, 821 (1st Cir. 1984) (defendant failed to raise a material issue of fact concerning the nature of the substances identified as cocaine and cocaine hydrochloride); *cf. United States v. Ross,* 719 F.2d 615, 617-18 (2nd Cir. 1983) (new trial required because of instructional error touching upon isomer defense). Mr. Collier did not forfeit the issue and contested the evidence and expert acknowledged that they did not test for these materials. TR, Vol. 3, at 273. The witness also acknowledged that he was not an expert in stereoisometry. *Id.* at 272. As he was not an expert in this field, testimony from him should not have been received to the jury. Fed. R. Evid. 702.

Following the examination, Mr. Collier requested and was denied a jury instruction on the isomer theory of defense. TR, Vol. 3, at 324. The request was renewed later by Mr. Collier's counsel. *Id.* at 378. The burden in a criminal case for the Government is to prove every element of an offense charged, but they do not have a burden of proving that a term used in its commonly understood sense has no other

18

possible meaning – at least until the possibility of another meaning is raised by the defense. *See United States v. Koonce*, 884 F.2d 349, 353 (8th Cir. 1989)(citing *United States v. Francesco*, 725 F.2d 817, 821 (1st Cir. 1984)).

Having challenged the chemical structure of the cocaine the burden should have been placed on the Government to show that the given substances met the definition of a prohibited substance under federal law. Instead, the Government failed to present a witness that could testify as to the isomers or presence of isomers and Mr. Collier was denied multiple requests for a proper instruction governing the defense, which were contemporaneously objected to and preserved.

**7.** <u>The District Court Erred In Denying Collier's Motion For A Mistrial When The Prosecuting Attorney Commented On His Post-Miranda Silence During The Government's Closing Argument.</u>

It is well-established that prosecutorial misconduct in closing arguments may result in the reversal of a conviction. The district court has broad discretion in controlling closing arguments, and this Court will not reverse absent a showing of an abuse of discretion. *United States v. Johnson*, 968 F.2d 768, 769 (8th Cir. 1992). It is similarly well-established that prosecutorial misconduct occurs when the prosecutor comments at trial, "directly or indirectly," on the defendant's failure to testify. *United States v. Durant,* 730 F.2d 1180, 1184 (8th Cir. 1984). If the appellate court finds a constitutional error, it will not set aside the verdict unless the government proves the error harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 22-24 (1967).

Appellate Case: 23-3255    Page: 25    Date Filed: 12/19/2023 Entry ID: 5346058

The Fifth Amendment to the United States Constitution provides a privilege against self-incrimination. U.S. Const. Amend. V. A prosecuting attorney's comments about the defendant's exercise of that privilege may infect the fairness of the trial regardless of whether the referenced silence occurred at trial, or post-*Miranda* upon arrest. *See Griffin v. California*, 380 U.S. 609, 609, 85 (1965); *see also United States v. Gentry*, 555 F.3d 659, 662 (8th Cir. 2009). Comments on the defendant's silence pre-Miranda, on the other hand, have been upheld by the United States Supreme Court. *See Brecht v. Abrahamson*, 507 U.S. 619, 628 (1993). At closing argument, the prosecuting attorney directly commented on Collier's post-Miranda silence when he was arrested for alleged cocaine trafficking. TR, Vol. 3, at 404. While discussing the second element of the offense—"knowingly possessing" [cocaine]" the prosecuting attorney made the following comment:

> "Mr. Collier told Trooper Blackerby about the 10th [sic] kilos of cocaine in the front seat. Mr. Collier—Mr. Collier said that statement to Trooper Blackerby[,] and Trooper Blackerby said that to Corporal May on video. The first dtime he said it, he said it in front of Mr. Collier. Mr. Collier's response was, ["]no, I didn't say that.["] ***Mr. Collier said nothing.***" TR 404 (emphasis added).

At the close of the government's argument, defense counsel approached the bench to object to the government's comment on Collier's silence. TR, Vol. 3, at 408.

> **MR. BAKER:** Your Honor, we have a concern that [the prosecuting attorney] just stated essentially that after Blackerby said something, that he didn't say anything, client was Mirandized and had the right to remain silent.

Appellate Case: 23-3255     Page: 26     Date Filed: 12/19/2023 Entry ID: 5346058

**MR. MCREE**: That's not true, Your Honor.

**THE COURT**: Mr. McCree?

**MR. MCCREE**: Your Honor, that's not the sequence of events. That when this was stated he was not Mirandized, and this was not a comment about his Miranda silence. This was when Blackerby told him that there is a kilo of cocaine in the front of the car. Mr. Collier's response was not that this - - I didn't say that.

**THE COURT**: But didn't - - Blackerby say that before or after the[,] "I want a lawyer" statement? It was before, right?

**MR. MCCREE**: Yes, Your Honor.

**THE COURT**: Before they get him out of the car. No, it was after.

**MR. BAKER**: It's after.

**MR. MCCREE:** It's after. And the video where he is - - he says he invokes his right to counsel is when he's taken to the backseat. And so that's clip number - - I believe that is clip number ten [,] I believe, or eight.

**THE COURT:** Mr. Baker.

**MR. BAKER:** Trooper May assumes he found the stuff. Trooper May Mirandized my client, so my client's right to remain silent was intact. The lawyer and statements relate to questioning after invocation of the right to counsel and are separate from the continued questioning and statements that would follow versus the statement that implicated my client needed to say something or to respond to Blackerby's statement on the substance.

**MR. MCCREE:** And Your Honor, I would also further note that Mr. Collier testified today that what Sergeant Blackerby said was true. So this is not the case in which his

21

silence is being used against him. This is just further evidence of what he admitted himself on the stand today, that he put those items into the bag and that he knew that they were there. All of that's consistent. ***And that was my point was that when Sergeant Blackerby said that he didn't say it wasn't his***, and today he affirmatively said that was mine, that I did put that there.

**THE COURT**: Do you agree, Mr. McCree, that the silence occurred after the Miranda warning?

**MR. MCCREE**: Your Honor, the Miranda warning I recall is when he said, I invoke my right to counsel. I'm trying to recall if there was a first one, but . . .

**THE COURT**: What would you have me do, Mr. Baker?

**MR. BAKER**: Your Honor, we move for a mistrial.

**THE COURT**: That will be denied. We've gone too far down the road. I'm hoping to give the jury a limited instruction. This is a very small slice of the case. A mistrial is not justified. TR, Vol. 3, at 408-412.

After denying Collier's motion for a mistrial, the district court issued a cautionary instruction. This instruction was insufficient to cure the error, as it mentioned nothing of the fact that the prosecuting attorney cannot use Collier's silence against him, and instead it vaguely informed the jury that counsel's argument is not evidence. TR, Vol. 3, at 412.

The district court should have granted the mistrial, as the prosecuting attorney directly commented on Collier's post-*Miranda* silence. The error here is similar to that in *United States v. Triplett*, 195 F.3d 990, 995 (8th Cir. 1999), although the prejudice is greater.

22

In *Triplett*, the prosecuting attorney said at closing argument that, "[W]hat you didn't hear was that the defendant didn't possess the drugs," and that, "[Y]ou never heard evidence that the defendant didn't know that he possessed the drugs." *Tripplet*, 195 F.3d at 995. Whereas here, the prosecuting attorney said, "[Y]ou heard nothing" in reference to Mr. Collier after Trooper Blackerby had uncovered the suspected cocaine and *Mirandized* him. This is a direct comment on Mr. Collier's silence, and the comment violated his Fifth Amendment right.

Moreover, the government cannot prove the error was harmless beyond a reasonable doubt. In analyzing whether the violation is harmless, the court examines four things: (1) whether the government made repeated violations; and (2) whether any curative effort was made by the trial court; (3) whether the defendant's exculpatory evidence is transparently frivolous; and (4) whether the other evidence of the defendant's guilt is otherwise overwhelming. *Fields v. Leapley*, 30 F.3d 986, 991 (8th Cir. 1994).

First, the government did not make repeated violations. Therefore, this factor concededly does not benefit the appellant. Second, however, the district court's attempt to remedy the error was ineffectual, as it mentioned nothing about the error that had just occurred. Vaguely referencing that argument is not evidence, which the jury had already been informed, does little, if nothing at all. Third, Collier's exculpatory evidence is not frivolous, and the other surrounding evidence is not overwhelming. Thus, this

23

Court should rule that district court should have granted a mistrial when the government inappropriately commented on Collier's right to remain silent.

### C. CONCLUSION

For the foregoing reasons, the appellant, Tommy Collier, respectfully requests this Court to reverse and dismiss the conviction and sentence imposed by the United States District Court for the Eastern District of Arkansas. Alternatively, Collier respectfully requests the Court to reverse his conviction and sentence and to remand the case to the United States District Court for the Eastern District of Arkansas for a new trial.

Date Signed: December 19, 2023          Respectfully submitted,

/s/ Christopher H. Baker

Christopher H. Baker
James Law Firm
1001 La Harpe Blvd.
Little Rock, AR 72201
Office: (501) 375-0900
Email: Cbaker@jamesfirm.com
*Attorneys for Appellant Tommy Collier*

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limitations of Fed. R. App. P. 32, by way of Fed. R. App. P. 5(c)(1), because excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 5,871 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced type using Microsoft Garamond, size 14.

3. The electronic versions of this brief and the accompanying addendum have been scanned for viruses and are virus-free.

Date Signed: December 19, 2023       /s/ Christopher H. Baker

                                       Christopher H. Baker

                                       AR Bar No. 2022124

                                       *Attorney for Appellant Tommy Collier*

Appellate Case: 23-3255   Page: 31   Date Filed: 12/19/2023 Entry ID: 5346058

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 19, 2023, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF System.

/s/Christopher Baker

Christopher Baker, Esq.
Arkansas Bar No. 2022124
*Attorney for Tommy Collier*
cbaker@jamesfirm.com

James Law Firm
1001 La Harpe Blvd.
Little Rock, AR 72201
Telephone: 501-375-0900
Fax: 501-375-1356